609 A.2d 887

**AMCARE 2 PARTNERS, Appellant,**

v.

**ZONING HEARING BOARD OF HAVERFORD TOWNSHIP, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1992.

Decided May 15, 1992.

Richard C. Slama, Jr., for appellant.

John H. Toal, for appellee.

John C. Janos, for intervenor.

Before: CRAIG, President Judge, and McGINLEY and KELLEY, JJ.

CRAIG, President Judge.

Amcare 2 Partners (Amcare) appeals from an order of the Court of Common Pleas of Delaware County that dismissed Amcare's appeal from a decision of the Zoning Hearing Board of Haverford Township (board), denying Amcare's application for a Certificate of Use and Occupancy or, in the alternative, a special exception or variance.

The issue before this court involves the location of the boundary between a C–1 Limited Commercial District and an R–4 Low to Medium Density Residential District, which will determine whether the requested office use is an allowable one in the commercial district, or is prohibited because the location is in a residential district.

The facts, as found by the board, are as follows. Amcare owns a parcel comprised of three contiguous lots referred to as Lot Nos. 58½, 60 and 61. The parties do not dispute that Lot Nos. 58½ and 60 are located in a C–1 Commercial District. Those two lots are improved with a single building currently used as a private emergency medical care facility. Lot 61 is improved with a house, erected at the turn of the century, which is currently being used as an administrative office for the emergency facility. Lot 61 is also known as 3 Tenby Road, which is how this court will refer to Lot 61 throughout this opinion. As noted above, the problem is to determine whether 3 Tenby Road is also in the C–1 Commercial District or is in the R–4 Residential District.

Amcare purchased 3 Tenby Road in 1985 from Ambulatory Medical Care, Inc. At the time Amcare purchased the property, it did not apply for or receive an occupancy permit.

In 1989, the Code Enforcement Officer refused to grant Amcare a Certificate of Use and Occupancy to use 3 Tenby Road as an office. Amcare appealed to the board, requesting a special exception or a variance to use the property for its

administrative office. The board held hearings on February 1, 1990 and May 17, 1990. On June 21, 1990, the board denied Amcare's appeal. The board sent written notice of the decision to the parties the following day. On August 2, 1990, the board issued a written decision in which it determined that 3 Tenby Road lies within the R–4 Residential District. The board denied Amcare's request for a variance, concluding that no unnecessary hardship exists because the premises have no unique physical circumstances or conditions. The board also concluded that Amcare was not entitled to a special exception.

The trial court affirmed the board's decision, noting that [T]he evidence submitted by the appellant consisted of engineers' evidence that the zoning map, which was not drawn to scale, did not clearly indicate in which zone the subject property was located. (Opinion, 9/11/91, p. 2.)

The trial court cited section 182–402 of the township's zoning ordinance, which states that the C–1 Commercial District is intended to provide for limited types of commercial development "along certain major arterial routes." The trial court determined that 3 Tenby Road lies on a quiet, tree-lined, residential avenue, and as such it is not located on any arterial route; thus, 3 Tenby Road is not within the C–1 Commercial District.

Amcare argues that the board and the trial court erred by disregarding evidence taken directly from the official zoning map concerning the location of the zoning district boundary line. That evidence consists of two letter-reports prepared by the township's engineer who concluded that 3 Tenby Road lies within the C–1 Commercial District. Amcare asserts that the board and trial court erred in relying upon the statement of purpose in section 182–402. We agree.

■ Our scope of review in a zoning appeal in which the trial court has not taken additional evidence is limited to a determination of whether the zoning hearing board has manifestly abused its discretion or committed an error of law. *Cope v. Zoning Hearing Board of South Whitehall Township,* 134 Pa. Commonwealth Ct. 236, 578 A.2d 1002 (1990). A

zoning hearing board abuses its discretion only if its findings are not supported by substantial evidence. *Id.*

■  The resolution of this case turns upon interpreting the legal effect of the township's zoning map. Official zoning maps that are adopted when a municipality enacts a zoning ordinance are not subordinate to the written words of the ordinance but are a part of the zoning ordinance.

Exhibit A–7 in the record shows the districts at issue; it is attached at the end of this opinion as Appendix A. (R.R. 109a.) The lot at 3 Tenby Road is left of the line to which the C–1 arrow is directed. The official zoning map of the township shows only the zoning districts; no lots are laid out on the zoning map. However, a view of the zoning map (Appendix A) clearly shows that the C–1 Limited Commercial District extends eastward on Tenby Road. The board received evidence from the township engineer, Mr. John J. Gillespie, in the form of two letter-reports with attached maps showing the zoning districts and the lots. Mr. Gillespie reported that he had examined the official zoning map to determine the zoning district in which 3 Tenby Road lies. He stated, in the letter dated March 12, 1990:

> I have determined that the current zoning is C–1. As shown on the above mentioned maps, the boundary line for Zone C–1 extends from the intersection of Lansdowne Avenue and Tenby Road to a point One Hundred Thirty Feet (130′) in a easterly direction, the line then extends in a southerly direction along the east side property line of # 3 Tenby Road to a boundary line for Institutional Zoning, which runs along the rear property line of # 3 Tenby Road. From the information supplied, # 3 Tenby Road is seen to be within the limits of C–1 (Limited Commercial) Zoning.

.    .    .    .    .

(R.R. 147a.)

Exhibit B–1, one of the maps to which Mr. Gillespie referred, appears at the end of this opinion as Appendix B. (R.R. 148a.)

Amcare also presented the testimony of a registered architect, Mr. Thomas J. O'Brien. Mr. O'Brien testified regarding

his own examination of the official zoning map and his determination of the zoning category for 3 Tenby Road. Mr. O'Brien opined that 3 Tenby Road falls within the C–1 Limited Commercial District.

In opposition, the protestants presented the testimony of Mr. Charles F. Kain, a registered engineer. Mr. Kain disputed the measurements made by Mr. Gillespie, the township engineer, and reported that, based on measurements he made in accordance with the scale of the zoning map, his determination of the location of the boundary line of the C–1 District was at a point 120 feet eastward onto Tenby Road, rather than Mr. Gillespie's determination of 130 feet.

■ Despite the evidence presented regarding the location of the zoning district boundary,[1] the board only made findings

1. Amcare originally appealed to the board requesting a special exception or variance; thus, the board's decision was based on that request. However, during the course of Mr. O'Brien's testimony the question of where the boundary line falls was brought to the board's attention; the board determined that it would receive evidence regarding that question, as the following excerpt from the proceedings illustrates:

THE WITNESS [Mr. O'Brien]: But, see, if you were to survey it, you would need to know a dimension. You don't know, there is nothing specified, as to how far the division between C–1 and R–4 is from anything. . . .

MR. HELD [Code Enforcement Director]: To answer that, the mylars and linens of 1974 are available. I mean I could get those, if that was the bottom line here in determining that line.

· · · · ·

MR. BENNETT [Attorney for Amcare]: Gentlemen, would it be possible for Mr. Held to get that from Mr. Gillespie?

MR. HELD: Certainly I'll get it—

MR. BENNETT: And then whatever his finding may be, especially if it is favorable to us, be included in the record. I did not,—quite frankly I didn't anticipate this. I just assumed, based upon the tax map, the original plan and everything else that there would not be a—really a question about what district it was in. So if we could get Mr. Gillespie perhaps to certify, in a way that engineers do, what the zoning is throughout that entire parcel.

MR. TOAL [Board Solicitor]: Right, sir, you're saying that you would be satisfied that the Township Engineer could provide this Board with some written opinion based upon his going to the original mylars and linens—

MR. BENNETT: Yes—

MR. TOAL: —and regardless of what that result is, you would allow that to be in the record?

regarding Amcare's entitlement to a special exception and variance for its proposed use of its property and failed to make any specific findings regarding the district boundary location; instead, the board implicitly determined that the boundary line lies at the westward border of 3 Tenby Road and hence, that 3 Tenby Road lies within the R–4 Residential District. This court concludes that there is no substantial evidence to support that finding.

The lot at 3 Tenby Road has frontage on Tenby Road of fifty feet. Thus, even accepting Mr. Kain's opinion that the distance of the boundary line is 120 feet eastward on Tenby Road, or ten feet less than Mr. Gillespie's estimate, the boundary line would be within the subject lot. Section 182–105 of the Zoning Ordinance is titled "Zoning Map; establishment of boundary lines." Section 182–105(C) provides:

> C. Boundary tolerances. Where a district boundary line divides a lot held in single and separate ownership at the effective date of this chapter, the use regulations applicable to the less restricted district shall extend over the portion of the lot in the more restricted district a distance of not more than twenty-five (25) feet.

Accordingly, if the boundary line does fall within 3 Tenby Road, the zoning ordinance makes the use regulations of the least restrictive district, the C–1 Limited Commercial District, applicable, rather than the R–4 Residential District.

The board argues that section 182–105(B) controls here. That section provides:

> B. District boundary lines. The boundaries between districts are, unless otherwise indicated, either the center lines of streets, alleys or railroad rights-of-way or such lines extended or lines parallel or perpendicular thereto. Where figures are shown on the Zoning Map between a street and a district boundary line, they indicate that the district boundary line runs parallel to the street line at a distance therefrom equivalent to the number of feet so

MR. BENNETT: Yes.
MR. TOAL: All right.
(N.T., 2/1/90; R.R. 55a–56a.)

indicated. In instances where a district boundary line is a property or township boundary line, the distances shown will be those measured from the property line to the nearest identifiable landmark, such as a street or railroad, located at each end of the property line. In these cases, the boundary line is coincidental with the property line existing at the time this chapter is adopted. Boundaries indicated as approximately following property or township boundary lines shall be construed as following such lot lines. Distances not specifically indicated on the official Zoning Map shall be determined by the scale of the map. Where the street or property layout existing on the ground is at variance with that shown on the official Zoning Map or in any other case of doubt or disagreement concerning the exact location of the boundary line, the determination of the Zoning Hearing Board shall prevail.

Although section 182–105(B) provides that the board's determination concerning the location of a boundary line shall prevail when doubt or disagreement occurs, the board's findings must be based upon evidence in the record. The board erred by ignoring the evidence in the official map of boundary line location and by failing to apply section 182–105(C). In construing a zoning ordinance, the permissive widest use of land is the rule and not the exception, unless specifically restrained in the valid and reasonable exercise of police power. *Neshannock Township v. Musguire,* 86 Pa.Commonwealth Ct. 246, 484 A.2d 839 (1984).

The board's and the trial court's reliance upon section 182–402 of the zoning ordinance is misplaced. Section 182–402(A) provides:

A. Specific intent. It is the purpose of this section to make provision along certain major arterial routes for limited types of commercial development that complement each other and adjacent land uses.

That section is merely a statement of the purpose of providing a commercial district. Even assuming that the township intended to permit a commercial district only along major

arterial routes, the official map indicates that the C–1 District extends from Lansdowne Road eastward on Tenby Road. Accordingly, this court concludes that the board erred and abused its discretion by finding that 3 Tenby Road lies within the R–4 Residential District.

The order of the trial court is reversed.

## ORDER

AND NOW, this 15th day of May, 1992, the order of the Court of Common Pleas of Delaware County, dated August 8, 1991, at No. 90–12896, is reversed.

## APPENDIX A